IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IN RE:

    MAPLE 888 GOLDEN TOWER LLC

                                 Debtor

Case No:

Chapter 11

PLAN OF REORGANIZATION

-------------------------------------------------------------------X

The Debtor Maple 888 Golden Tower LLC is a duly formed New York domestic limited liability company with its principal place of business at 134-37 Maple Ave., Flushing, NY 11355. The Debtor has been in the business of real estate investment since December 20, 2016. The Debtor is the owner of the property located at 134-37 Maple Ave., Flushing, NY 11355.

The Debtor Maple 888 Golden Tower LLC is a single asset real estate debtor as defined by 11 U.S.C. § 101(51B). The Debor Maple 888 Golden Tower LLC will soon under a Receiver's control.

## Article 1: Summary

This Plan of Reorganization by Refinance under Bankruptcy Code 11 U.S.C. § 362(d) proposes to pay creditors of the Debtor Maple 888 Golden Tower LLC from an infusion of capital, loan proceeds, cash flow from operations, and future income. The refinancing can only be achieved through an infusion of capital to be made by the members of the Debtor if this plan of reorganization is approved. This Plan provides for classes of priority claims, classes of secured claims, classes of non-priority unsecured claims and classes of equity security holders. Once the Debtor is able to refinance the property, the Debtor intends to satisfy the classes of priority claims, classes of secured claims, and classes of non-priority unsecured claims.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately $1,791,122.50. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to **Articles 3 through 6** of this Plan for information regarding the precise treatment of their claims. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

## Article 2: Classification of Claims and Interests

Class 1: classes of priority claims, all allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). The Debtor Maple 888 Golden Tower LLC has no unpaid property tax. The Debtor Maple 888 Golden Tower LLC has no gap claims, wage claims, employee benefits claims, customer deposit claims, capital requirement claims, etc. (The Debtor Maple 888 Golden Tower LLC had two employees Xiangyu Cao (Managing member) and the super Israel Espinal (paid under wife's name Dalia Beltran) with 1099 Tax form. Other employees were paid by cash.)

Class 2: classes of secured claims, the claim of Mohammad A. Malik, to the extent allowed as a secured claim under § 506 of the Code. Please see Official Form 206D. No other secured claims. The total amount of secured loan principal is $11,050,000.00 with a total default 24% interest $3,536,000.00 since June 5, 2020. Thus, the total amount of secured debt is $14,586,000.00.

Class 3: classes of non-priority unsecured claims, please see Official Form 206E/F. The total amount of non-priority unsecured creditors' loan principal is $1,674,250.00. Each loan's simple annual interest rate is 2%. Thus, the total amount of non-priority unsecured debt is $1,791,122.50.

Class 4: classes of equity security holders. The Debtor Maple 888 Golden Tower LLC currently has four Equity Interest holders: Xianyu Cao 52%, Jijiang Zheng 30%, Fukun Zhao 8%, Xinying Liu 10%. Each member raised capitals in the past 4 years. The Debtor Maple 888 Golden Tower LLC has a list of investors who are qualified as Equity Interest holders as well. The total amounts of equity security holders' interest did not calculate in the debt/Petition since equity security holders are entitled residual ownership rights.

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court fees

Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Each holder of a priority tax claim will be paid regular installment payments of a total value, as of the effective date of the plan, equal to the allowed amount of such claim, which will be consistent with § 1129(a)(9)(C) of the Code. The Debtor has no priority tax claim.

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan shall have been paid or will be paid on the effective date.

All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) that have accrued will be timely paid up until the case is closed, dismissed, or converted to another chapter of the Code.

### Article 4: Treatment of Claims and Interests Under the Plan

Class 1 Priority Claims, excluding those in Article 3, is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by the final non-appealable order.

Class 2 Secured claims holder Mohammad A. Malik is impaired by this Plan. Mohammad A. Malik will be paid in full principal $11,050,000.00. Under 11 U.S.C. § 362(d)(3), The interest payments must be equal to the non-default contract interest rate on the value of the creditor's interest in the real estate. Thus, Mohammad A. Malik will be paid an interest of 6% non-default contract interest instead of 24% default interest. The total amount of secured debt will be $11,934,000.00 instead of $14,586,000.00. Further, the secured property's value is over the amount owed and the Secured Creditor is over secured, thus, the post petition interest is entitled. The adjusted secured debt will be paid in full, in cash of a total value $12,155.000.00 on or about January 5, 2022, which including the pre-petition debts totaling $11,934,000.00 plus the four (4) months post-petition interest $221,000.00, while the Debtor's property can be refinanced and this claim holder, Mohammad A. Malik, can be fully paid from the loan proceeds of a refinancing.

To achieve refinancing, **201 46 Liberty LLC** will invest $4,000,000.00 by selling their property located at 201 46th Street, Brooklyn, New York. The new investor **201 46 Liberty LLC** monies totaling $4,000,000.00 will be available on or about October 5, 2021. **201 13 Liberty LLC** is related to the Debtor's members.

The refinance bank (Bank Name will be provided when available) will be providing a total loan amount equal to $9,350,000.00 on or about January 5, 2022. Thus, the Debtor's refinance will be completed on or about January 5, 2022. The Secured claim holder Mohammad A. Malik's adjusted secured debt will be paid in full, in cash of a total value of $12,155.000.00 on or about January 5, 2022.

Class 3 Non-priority unsecured creditors will be impaired. This Class will be paid regular installment payments in a total amount of $1,674,250.00 (without 2% simple annual interest) instead of $1,791,122.50 within 2-3 years. The repayment will be started on or about January 5, 2022 when the refinance monies $9,350,000.00 is available. The Debtor also plans to sell one part of the Debtor's own property in case the refinance monies failed to repay all non-priority unsecured creditors. The vacant land/lot attached to the building 134-37 Maple Ave., Flushing, NY 11355, has a market value of $7,000,000.00.

Class 4 Equity security holders of the Debtor will be impaired. This Class will have no repayment until Class 1, Class 2, and Class 3 are satisfied. The total amounts of equity security holders' interest did not calculate in the debt/Petition since equity security holders are entitled residual ownership rights, and this Plan is for the Debtor's reorganization rather than liquidation. The Debtor Maple 888 Golden Tower LLC will continue the operation of the regular business during the Plan.

### Article 5: Allowance and Disallowance of Claims

As to the Disputed claim, Maple 888 Golden Tower LLC is under a foreclosure case (Index No.: 712344/2020) regarding the property 134-37 Maple Ave., Flushing, NY 11355, in Supreme

Court of the State of New York County of Queens. Secured creditor Mohammad A. Malik filed Summons and Complaint dated August 6, 2020. The Debtor Maple 888 Golden Tower LLC in interest has filed an Answer/objection on September 11, 2020. The Honorable Joseph J. Risi Acting Justice of the Supreme Court mentioned to appoint Irene Mattone as the Receiver in the conference held on August 3, 2021. There is no receiver appointment order filed in the New York State Unified Court System. No distribution will be made on account of the disputed claim unless such claim is allowed by a final non-appealable order.

The Debtor Maple 888 Golden Tower LLC will have the power and authority to settle and compromise the disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### Article 6: Provisions for Executory Contracts and Unexpired Leases

The Debtor Maple 888 Golden Tower LLC assumes, and if applicable assigns, all the following executory contracts and unexpired lease as of the effective date. Please see the list in Official Form 206G. There is no rejection of executory contracts or unexpired lease.

### Article 7: Means for Implementation of the Plan

The Plan will be implemented as required under § 1123(a)(5) of the Code. The adequate means including: (1) infusion of capital by new investor **201 46 Liberty LLC** with a total amount of $4,000,000.00 on or about 10/5/2021 and refinance $9,350,000.00 as a bank loan on or about 1/5/2022. The new investor **201 46 Liberty LLC** will raise monies by selling the property located at 201 46th Street, Brooklyn, New York. The closing of the new investor's Brooklyn property sale will be proceeded on or about October 5, 2021. It is understood that the Debtor has received confirmation that the banks would be willing to provide a loan as long as the capital is increased. (2) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan; (3) extension of a maturity date or a change in an interest rate or other term of outstanding securities. Once a bankruptcy case is filed, the Debtor may find it easier to raise capital with debtor-in-possession (DIP) financing. DIP financing can enable businesses to fund their ongoing operations, reorganize, and prepare to pay off debts. Businesses generally have four months to come up with a debt reorganization plan after filing for bankruptcy, but that length of time can be extended up to 18 months with court approval.

### Article 8: General Provisions

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: N/A

The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

Unless a rule of law or procedure is supplied by federal law (including Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

The Debtor is a limited liability company and is not a corporation. Therefore, the Debtor is exempt from § 1123(a)(6) of the Code.

As to Retention of Jurisdiction, The Court shall retain jurisdiction with respect to implementation of the Plan after the effective date of the Plan.

## Article 9: Discharge

On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

## Article 10: Other Provisions

Other provisions: N/A


Respectfully submitted,

*Xiang yu Cao*  
Xiangyu Cao (Print)

*Xiangyu Cao*  
Xiangyu Cao (Signature)

_____  
Sang J. Sim, Esq.

_____  
Sang J. Sim, Esq.